Good morning, Your Honors, and may it please the Court, William Mara on behalf of Plaintiff Appellant James Maben, I would like to reserve three minutes for rebuttal. The District Court erred when it granted summary judgment in favor of the defendant, Mr. Troy Thelen, in this prisoner First Amendment retaliation case. The District Court did not dispute, and indeed its opinion is best read to implicitly concede, that if the traditional summary judgment standard were applied in this case, summary judgment in favor of the defendant would be inappropriate. The District Court nevertheless invoked the 8th Circuit and 11th Circuit's Checkmate Doctrine to hold that Mr. Maben's First Amendment retaliation case was categorically foreclosed because there was a finding of misconduct and some evidence to support that finding. I submit that the Checkmate Doctrine has no basis in the text of the First Amendment. What would you say, I'm not sure I care for the name of this so-called doctrine, but if we put that to the side, what would you say about, I don't know, maybe this is what the Second Circuit does, but let's just say there were no material dispute of fact about whether someone had violated prison rules. In that setting, it seems to make some sense to me, the idea that it's weird to have a retaliation claim when everyone agrees you did violate prison rules. Is that okay? I mean, you can say yes and then say it doesn't apply here, but would that be an okay doctrine? I don't think so, Your Honor. I think that the- You don't even agree with what the Second Circuit's doing. I think that the question would be, even if the misconduct was well-based, even if he did in fact commit the misconduct, the question would still be, was the motivation for punishing him for this misconduct in fact to retaliate? And so, you know, as the Ninth Circuit says in Bruce, prison officials cannot use a proper and neutral procedure in retaliation for a prisoner's exercise of his constitutional right. Now- One thing that's, you know, Wren does this. You get yourself out from under the state-of-mind causation inquiries by just saying it doesn't matter. Right. There's something they were allowed to punish. They punished it. We're not going to, every time there's a prison punishment, we're not going to have a lawsuit about their motives. That would be a stunning development in prison systems, right? Sure. And I want to make clear that I'm not resisting the proposition that proof of misconduct, assuming, for example, either preclusion applies or a fact finder in federal court finds in the first instance- Well, there's no dispute of fact in summary judgment, which is not this case. Or there's no dispute of material fact. I'm not resisting the proposition that that would be powerful evidence. This is what the Fifth Circuit does. So the Fifth Circuit admits that a legitimate disciplinary complaint is, quote, probative and potent summary judgment evidence. It's just not an absolute bar. And I think the reason that it cannot be an absolute bar is because what you have is you will unfairly tempt prison officials to essentially enrobe themselves in immunity by finding the person guilty of misconduct. So it very well might be, Judge Sutton, in a particular case that Mr. Mabin, for example, couldn't prove- Remember, the premise of what I'm saying is there's no dispute that it happened. The person violated the prison rules. Sure. Well, I think then, for example, we would look to Judge Ambrose's hypothetical that begins his concurrence in the Third Circuit case, Watson. That hypothetical is a case where the prison official goes up to the prisoner and says, you violated this prison rule, and I would not punish you but for the fact that you filed a grievance against my buddy the previous day. And so that's a case where I think- But when you say no absolute rule, what you're really saying is there'll never be summary judgment. There'll always be a jury trial. Potent evidence? What the heck does that mean? There'll always be a jury trial every single time someone's unhappy with the discipline imposed on them for violating prison rules. I don't think that's so, Your Honor. I understand that- I don't see the sand on the slippery slope. You just say potent. Sure. That's not going to- So I think there are a number of screens. I think this is a similar argument that was raised in the Crawford L case at the Supreme Court. And what the Supreme Court said there was, I think, two points. It said, first of all, there's a number of screens that will filter out if you think about the denominator as prison retaliation claims. Here, for example, you have the Peterson-Robertson preclusion inquiry. You have the pleading standard. So the prisoner would have to plausibly allege under 12b-6 and then submit sufficient evidence for a reasonable fact finder to conclude. You're not actually saying you agree that the violation of prison rules was established. Because if you're saying that, then you'd have to concede the preclusive effect of the prison discipline that was imposed. And the criteria that have to be met for preclusion under the Peterson case and all that, you wouldn't be able to argue if you agreed that the discipline was properly imposed. Maybe I'm misunderstanding what you're saying. I'm certainly not conceding that in this case, Your Honor. I understood there'd be a hypothetical about a case where the prison misconduct finding was well-grounded. In this case, I think this case is a particularly good example about why the checkmate doctrine's categorical rule cannot be the law. Because as you point out, Judge Clay, there's nothing here to defeat the fact that there's a genuine issue of material fact about whether Mr. Maben did cause misconduct here. Didn't what the district court do was to mix up his discussion of preclusion with the discussion of the checkmate doctrine so that he had the discussion of the two mixed up so he didn't delineate his discussion so his ruling would be clear in that regard? I think there's some ambiguity here for sure about whether the district court had one unified holding or two distinct holdings. In all of the cases that I've seen, the checkmate doctrine has not been understood as a doctrine that is triggered only once you first conclude that the findings at the prison hearing have preclusive effect. And so for that reason, I believe that the best reading of the district court's holding is that it essentially had two holdings. First preclusion, and then setting aside that, could the checkmate doctrine be the law? Because all of these cases... I don't mean to interrupt you. So your argument would be you disagree with the court's preclusion holding and you don't think we should adopt or employ the checkmate doctrine, just to overly simplistically state it. That's right. I think the court should make clear essentially what it made clear in Thomas versus Eby and in Peterson, which is that the traditional summary judgment standard applies here. The mere fact that there is a finding of misconduct and some evidence to support that does not, as a categorical rule, establish, I guess you would say at summary judgment, the malhealthy defense. And that's not to say, Judge Sutton, that in a particular case, and perhaps the majority of cases... Let's shift the conversation to what is the protected conduct here. So he wanted another portion of food. So that's not free speech, right? Would we agree that this was not a free speech? I think it's certainly... Retaliation is against what, right? It has to be retaliation against constitutionally protected conduct. So are we going to say it was free speech because he asked for more food or is it access to the courts? I think it would be the right to petition for redress of grievances. I think if... So every time... This is what I'm just really struggling with this case. Every time in a prison you complain, ask for something you want more of, and then someone retaliates, we'll call it retaliation, that's always constitutional retaliation. I mean, doesn't Lewis v. Casey say there has to be some limit on this? So I think that... I think this is protected conduct. The first thing I want to say before addressing that directly is you don't have to make any new law here about what is protected conduct. I don't think that my friend on the other side has adequately preserved that argument. But even if you wanted to reach the question, I think that there's no dispute that if... Or there can be no dispute. That if he had written down a written grievance claiming that the prison food policy was not being followed or that either he specifically or prisoners generally were being shorted food, I think there's no dispute under this court's cases that... Okay, so but that's not what happened here. So what we would need then to develop is some distinction, I think, between oral grievances... If someone verbally says, I'd like more food, there just has to be a de minimis exception, otherwise, everything's a retaliation claim, as long as you've said a thing. That's bizarre in a prison. Sure. I think if you want a narrower rule, what I would suggest is what the Seventh Circuit has said in Pearson and what the Third Circuit has said in Mack, which were essentially the same posture as this, an oral complaint where the prison's policies... Or oral complaint. Even the word complaint is a bit of an exaggeration. I'd like more food. That's what he said, right? He said, according to you, he said it politely. It wasn't even a complaint. He said politely, I'd like some more food. And what he also said, this is at page 67 of the record, in his misconduct hearing itself, he said, I was trying to comply with the prison grievance policy. Your argument is leaving out factually a little bit of the way you argue in your brief, because I understood he's not asking for more food, that he wants more. He's saying he's not getting the adequate, minimal amount of food that he's entitled to. So he's complaining he doesn't want to be starved by not getting his food portion, which is different than saying he just wants more food. That's correct. He was saying... You have to make... You should make that clear in your argument, if that's your argument. I don't want to put words in your mouth. That is certainly my argument, that he was complaining that the prison food policies here were not being... They were starving him? That's his plan? That's his theory? Well, I don't think that he has to prove starvation to bring a legitimate... He's losing weight. That's not in the record. That's not in the record. But I don't think that that's his burden. I think if the prison is violating its policies... And I think the court can take judicial notice of some of the articles that I cite in the brief, that this is a very live public policy debate about the food service at these prisons. And so I think particularly where you have a prison policy, as you do here, where the prison is actually requiring him to raise his grievance orally, if all he had done was said nothing and then sat down and write his grievance, under paragraph G2 of the prison's grievance policy, which is cited in my reply brief, his grievance would have been denied on that day. I understand that the oral grievance is part of the grievance process, but that's exactly why there has to be a de minimis exception. Otherwise, every time you open your mouth in a way that complains, you arguably, as in this case, have started the formal grievance process. And that's, I think you have to agree, somewhat bizarre if you think about what goes on in a prison every day. And I think that you don't have to reach that question because I think... Because they forfeited it. That's the point. One, because they forfeited it. And two, in this case, back in October 2015, at his misconduct hearing, he said there, 67 of the record, I was trying to comply with the grievance policy. So this isn't a case of an ad hoc litigation-driven excuse, I think, for what he was doing. Thank you. May it please the court. Joseph Ho on behalf of appellee defendant Troy Thelen. Although appellant's brief and argument poses interesting legal questions regarding the checkmate doctrine, this court does not even need to reach the checkmate doctrine to resolve this All of which involved major misconducts. This case involves a minor misconduct. And this distinction is important for several reasons. Let me ask you this. Yes. Is the record clear enough as to why the plaintiff here didn't get served the standard amount of food? There is some dispute as to how much food plaintiff was entitled to. Plaintiff claims that he was entitled to more food than he was given. He's claiming that not only when he complained that he didn't get more food, but he's complaining that they were sort of discriminating against him or against some people. Is that right? I believe that's, I believe the plaintiff claims that he was being targeted for his meal portion. What do you say he should have done about that? If, what would his remedy be? Plaintiff is entitled to make peaceful inquiries as to the amount of food, whether or not he's getting the correct amount. Now the line worker who was working the food line gave him what was believed to be the correct amount. And there was some dispute as to how much food Mr. Maven was entitled to. And then the guard or whoever it is, what exactly did he do then? So the matter isn't, the factual matter is in dispute. According to plaintiff's version of events, the guard was standing... What we have to accept. Right. Exactly, Your Honor. So the guard was standing 30 feet away and then began hollering at the plaintiff. Why? Do we know? Smat at him. Right. But under plaintiff's version of events, I would guess that perhaps Mr. Maven was holding up the line. The guard wanted to keep the line moving. Maybe he was a prisoner the guard just didn't like or something. That is not clear in the record. There's no evidence that Mr. Maven was specifically targeted by other prison officials. There's no record of a history between Mr. Thalen and Mr. Maven. And certainly... But what should he... I mean, we have to accept that he thinks he was getting less food than he wanted. What should he have done differently? He is entitled to peacefully ask for more food and... He's required under the grievance process to orally ask. Correct, correct. So again, what should he have done differently? He does that. He peacefully asks according to his version of events. Right. According to his version of events. Correct. He doesn't get more food. Then he's, from his perspective, punished for asking. So he's entitled to ask for more food. According to plaintiff's version of events, that's what he did. Now, in this particular case, what plaintiff received was a minor misconduct. And a minor misconduct, this court has held in the Eighth Amendment context and also in the First Amendment context, not to give rise to a constitutional violation. And that is because the sanctions that accompany a minor misconduct are, as Judge Sutton has discussed, they are de minimis. And in this particular case, plaintiff received seven days loss of privileges. I don't think I was saying that for what it's worth. I was saying there has to be a de minimis exception to this. I did not say minor misconduct equals de minimis. So what's the case that establishes the point, since it's not Judge Sutton anymore? It's Ingram v. Jewell. And that is an unpublished opinion where the minor misconduct sanctions were discussed in both the Eighth Amendment and the First Amendment context. Of course, minor misconduct is just a label. Shouldn't we look at the adverse consequences, the actual discipline that was imposed to understand how significant the penalties were to the person? All their privileges are suspended for a week, two weeks, a month, or whatever it is, and whether a person of ordinary firmness would be deterred from complaining with those sorts of penalties being imposed. In fact, the harshness and severity of the adverse action or the penalties might be more descriptive in determining whether something was actually a minor or a major misconduct rather than the label that's attached to it, don't you think? Well, the major misconducts, the penalties, have significant... This court has held to have significant constitutional implications because they involve things like loss of good credit and things that would enhance... Visitation and phone use to family and things like that. Those are pretty important things to most prisoners, wouldn't you say? Sure. Those may be important things, but this court has never held that some minor misconduct sanctions have any constitutional implication. And that goes into the qualified immunity argument because even if this court were to conclude that minor misconduct sanctions may have First Amendment or Eighth Amendment implications in this matter, that law was not clearly established at the time when Officer Thalen wrote up Mr. Maven for misconduct. And so even if... I'm with Judge Clay on this point about the label doesn't mean anything to me. What is it exactly that were the conditions that were imposed on him? Loss of privileges. Loss of privileges. Spell it out. It may not mean much to you, but that's the whole point. How much does it mean to a reasonable person? Loss of privileges. Loss of privileges as to what? Loss of visitation rights. Not being able to go out to the prison yard. And that's for seven days? For seven days. Are you saying that's what's not clearly established? That there's nothing that says that kind of discipline? Correct. Yes. It's not clearly established that minor misconduct and also the minor misconduct sanctions have any constitutional significance. Now, this court has recognized that major misconduct... What does count? Sorry? What does count? This court has recognized that, first, that major misconduct sanctions, which include increased security classification, meaning that an individual will be going into a more restrictive environment, more restrictive prison. This individual may lose credit and also would have his prison sentence extended. This court has held that major misconduct sanctions and also even being written up for major misconduct. But doesn't a transfer from one section of a prison to a higher security section of a prison come with some of the things you're talking about? So, I mean, that's why it's so unhelpful to use the word major and minor. What's helpful to do is talk about what they're actually doing to the... Is it solitary? Is it not solitary? If you go to solitary, I'm going to guess that comes without visitation rights. So that's a feature of solitary and yet it's a feature of something here. Well, with solitary, you do not... There's other things. For example, in solitary, a prisoner does not go out to the lunch lines. They have their food. The food is brought to them. But then the... But I think here what we have is a need to draw a line somewhere where minor misconduct, where the sanctions are not to the same degree as a major misconduct sanctions, that when this court has not held that such sanctions implicate the First Amendment or the Eighth Amendment, then the officer is entitled to qualified immunity. And now if this court were to say minor misconduct sanctions or the third minor misconduct have constitutional implications, then what we're looking at is every single misconduct case, minor misconduct case, would become a constitutional lawsuit. Are we bound by the label that I guess the prison system itself puts on of minor and major? Or are we supposed to look at the actual facts of the case? This court should look at the facts of the case and actually what... We're not bound by the major, minor label. No, not bound. What is the relief salt? Money damages? I believe so. Let me ask you this. You would like us to give preclusive effect to what was decided by the prison in imposing discipline, as I understand it. And in order for there to be preclusive effect under this four-factor test of the Peebson case, certain safeguards should be observed. And obviously that would be to ensure the accuracy of the prison's administrative finding. But as I understand in this case, the hearing officer or whoever the decision maker was refused to look at the video of the incident. And the basis for his refusal was that the video didn't have audio with it. But obviously there would have been some information indicating whether there was a disturbance and whether the prisoner might have been responsible. So there was information available that would have indicated whether the administrative finding was accurate, but the hearing officer didn't even receive all the information. Isn't that a problem? Because we don't want to impose, or the prison even shouldn't want to impose, preclusive effect without taking into account what the facts of the incident, what the truth of the incident happened to be. The preclusion argument and the checkmate argument were not brought by Mr. Thalen below. Actually, it was the court's response that brought up the checkmate doctrine. Well, the checkmate doctrine wasn't below, but the preclusive effect, that was before the district court, wasn't it? The way Mr. Thalen framed this argument was according to Thaddeus X, meaning that if that even assuming the elements of a First Amendment case had been established, the defendant is entitled to a summary judgment if by a preponderance of the evidence the defendant demonstrates that he would have acted, he would have imposed the same misconduct even absent the plaintiff's demonstrations. So, and so the... Wait a minute, though. The safeguards were not observed under this four-factor test where you would get a record of the proceedings and there would be an opportunity for appeal of the matter to the state court. Here, they didn't even create a preservable record such that it could be reviewed. And Mr. Thalen is not asking that, this sort of preclusive effect that attends Peterson. Help us out. You've just got a minute or two left. A lot of things that happened in the district court weren't exactly what were argued. That's fine. Sometimes that's a good idea for a judge, but maybe this time it led to some overstatements. Maybe it is worth sending it back. If we do send it back, what should we do? What should we set it up for? To address the arguments that were raised below, which is the factors under Thaddeus X and qualified immunity. And both of those, I would say the qualified immunity is a purely legal matter, which this court can resolve without... That's the point about whether this type of discipline rises high enough to be a source of a retaliation claim. That's your point. Correct. Correct, Your Honor. I see that you're out of time. All right. Thank you for your argument. All right. Thank you, Your Honor. Any rebuttal? What's your answer to that last point? I don't know if you addressed that in your opening argument. The idea of, forget whether it's major, minor. We're not interested in those labels. But the actual discipline he received, what's the case that says that is sufficient for a predicate for a retaliation claim? Sure. I understand this to be under the adverse action, the second part of the retaliation framework. The case that my friend and the other son relies on, Ingram v. Jewell, is a 2004 unpublished decision. Page 21 of my reply brief, I cite a number of published decisions that post-date Ingram that hold, for example, actions that result in more restrictions and fewer privileges, qualifies... At that level, more... That's all they... That's what the court says. I think one thing that I want to point out on this adverse action point is this also was not raised below. And my friend admits that, I think, on page four of his brief. What was not raised below? The... Mr. Thelen did not argue before the district court that Mr. Mabin failed to present evidence on the adverse action problem. So I understand my friend now... Raised qualified immunity throughout. He did not raise qualified immunity with respect to the adverse action issue. He raised it with respect to causation and arguably protected conduct, but there was no argument before the district court that this does not qualify as an adverse action under Ingram or any other case. And so I don't think it's properly before this court. If it were, I think this certainly does qualify as an adverse action. What should we do? Just start all over and let everyone make their arguments and... I don't think the government should get a do-over here, Your Honor. I think the government made the arguments that it wanted to make before the trial court. Just as this court will hold prisoners to their waivers, I think the same rule should apply to a well-counseled litigant on the other side. I think the district court looked at those arguments and implicitly rejected them. And I don't think there should be a second opportunity here. And I think the grounds that the... The right to trial, is that what you want? Well, certainly there'd be a trial, sure. But I think that the grounds that the district court ruled upon are purely legal grounds that are fully before the court. And I think essentially what this appeal boils down to is the question whether assuming, which I think you can assume here, all of the requirements for the retaliation claim were satisfied. And I understand my friend to essentially admit that he engaged in protected conduct under his version of the facts and that causation is satisfied. Adverse action, I think I've satisfied it, but I think it's waived anyway. Well, I mean, it's a little... It's perilous in my view to say we're all done. And because if we decide that there wasn't a forfeiture of the qualified immunity, which I must say would surprise me. I've never heard of a state forfeiting a qualified immunity argument in a qualified immunity case. And it's just going to be a level of generality question of what they said, then you could lose. And it doesn't sound like that's been very well developed. So there's some benefit to both sides of it going back. Well, I think the adverse action law is clearly established. Hill, Harbin Bay, these cases cited at page 21 of my reply brief. So I do think that all of those are satisfied.  Does the mere guilt of misconduct, and I see my time is up. Does the mere guilt of misconduct foreclose the claim? Thank you. Thank you very much. Case is submitted.